a

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

| | |
|---|---|
| FAHEEM HASSAN #A221-391-261, Petitioner | CIVIL DOCKET NO. 6:26-CV-01104 SEC P |
| VERSUS | JUDGE TERRY A. DOUGHTY |
| BRIAN PATTERSON, Respondent | MAGISTRATE JUDGE PEREZ-MONTES |

# REPORT AND RECOMMENDATION

Before the Court is a Petition for Writ of Habeas Corpus under 28 U.S.C. § 2241 filed by Petitioner Faheem Hassan ("Hassan"), an immigration detainee at the Pine Prairie ICE Processing Center in Pine Prairie, Louisiana, Hassan challenges the legality of his continued detention under *Zadvydas v. Davis*, 533 U.S. 678 (2001), and seeks release from custody.

Hassan has shown that there is no significant likelihood of removal in the reasonably foreseeable future. The Government has not rebutted that showing. Therefore, the Petition should be GRANTED.

## I. Background

Hassan is a native and citizen of Pakistan. On January 9, 2025, U.S. Customs and Border Protection ("**CBP**") encountered and arrested Hassan after he entered the United States without inspection. Hassan was transferred to ICE custody on January 18, 2025, where he remains detained. ECF No. 9-1 at 1.

The Department of Homeland Security ("DHS") initially issued Hassan an expedited removal order but later vacated it and placed him in removal proceedings by issuing a Notice to Appear. ECF No. 9-2 at 1. The Notice to Appear charged Hassan as inadmissible under INA §§ 212(a)(7)(A)(i)(I) and 212(a)(6)(A)(i).

On May 13, 2025, Hassan moved for voluntary departure. ECF No. 9-1 at 1. On June 3, 2025, an Immigration Judge ("IJ") found Hassan removable and granted him pre-conclusion voluntary departure under INA § 240B(a), 8 U.S.C. § 1229c(a). ECF No. 9-3 at 1. Both parties waived appeal. *Id.* at 2.

The immigration judge ordered Hassan to voluntarily depart the United States on or before July 3, 2025, or within any extension DHS granted, and to remain detained until his departure. *Id.* at 1. The order expressly provided that, if Hassan failed to depart as required, the grant of voluntary departure would be withdrawn and the alternate order of removal to Pakistan would "become immediately effective." *Id.* The Government has not identified or produced evidence of any extension of the July 3, 2025 voluntary-departure deadline.

Hassan did not depart by July 3, 2025, and he remains in ICE custody. ICE completed Hassan's removal packet on June 10, 2025, and began arranging his removal. ECF No. 9-1 at 2. ICE Enforcement and Removal Operations ("ERO") initially requested a tentative removal date of September 4, 2025. *Id.* Hassan was transferred among several facilities for staging purposes but was not removed. *Id.*

ICE then sought travel documents from Pakistan. Although the request was submitted for review on January 26, 2026, as of May 4, 2026—the last update

identified in the Government's declaration—ERO was still requesting updates from headquarters. ECF No. 9-1 at 2-3.

Hassan alleges that he has cooperated with ICE's removal efforts, but that ICE has been unable to effectuate his removal. ECF No. 1-2 at 2, 6-7. Hassan contends that 8 U.S.C. § 1231 governs his detention and that it has exceeded the presumptively reasonable period recognized in *Zadvydas*.

The Government acknowledges that Hassan is a "post-removal order detainee," but contends that his detention is not governed by § 1231 because the immigration judge granted him voluntary departure. The Government instead asserts that Hassan's detention authority "converted to 8 U.S.C. § 1229b." ECF No. 9 at 2. As Hassan points out in reply, however, § 1229b governs cancellation of removal, not voluntary departure. ECF No. 12 at 1-3.

## II. Law and Analysis

Hassan does not ask the Court to vacate, review, or stay the removal order. He challenges only his continued post-removal-order detention. The Court has jurisdiction to consider that challenge. *See Nguyen v. Noem*, No. 5:25-CV-176, 2026 WL 237282, at *6 (S.D. Tex. Jan. 28, 2026) ("Mr. Nguyen contests only his post-removal-period detention . . . rather than any aspect of his underlying removal order or the decision by DHS to execute it. Thus, . . . the Court retains jurisdiction to review his detention.").

### A. Hassan's detention is governed by § 1231.

The parties dispute the statutory authority governing Hassan's continued detention. Hassan maintains that he is detained pursuant to § 1231 because his removal order is final. The Government acknowledges that Hassan is a "post-removal order detainee" and that the immigration judge's order became "administratively final" when both parties waived appeal, but nevertheless contends that § 1231 does not apply. ECF No. 9 at 2. Instead, the Government asserts that Hassan's detention authority "converted to 8 U.S.C. § 1229b" when the immigration judge granted voluntary departure under safeguards. *Id.*[1]

However framed and under either provision, the Government's argument is not supported by the statute itself, relevant jurisprudence, or the record. Section 1229b governs cancellation of removal and adjustment of status; it does not govern voluntary departure. Voluntary departure is instead governed by 8 U.S.C. § 1229c.

Petitioner's custody posture changed over time. He initially received pre-conclusion voluntary departure under 8 U.S.C. § 1229c(a), relief granted before removal proceedings conclude. *See* 8 U.S.C. § 1229c(a); 8 C.F.R. § 1240.26(b). In that posture, any continued detention is ancillary to the voluntary-departure grant and serves only to ensure timely departure. *See* 8 C.F.R. § 1240.26(b)(3)(i) (authorizing

[1] The Government's position is not entirely clear. The Government argues that Hassan is not detained under § 1231 because the IJ granted voluntary departure under safeguards. But then the Government cites § 1229b—governing cancellation of removal—rather than § 1229c, which governs voluntary departure. This could be attributed to a simple error, but the Government then cites 8 C.F.R. § 1240.26(c)(3). Here, the IJ granted pre-conclusion voluntary departure under § 1229c(a), not post-conclusion voluntary departure.

The Court therefore considers whether the initial safeguards condition authorized Petitioner's continued detention and, if so, whether that authority persisted after the voluntary-departure period expired and the alternate removal order became effective.

an IJ to impose conditions "necessary to ensure the alien's timely departure"); *Matter of M-A-S-*, 24 I. & N. Dec. 762, 765–67 (B.I.A. 2009) (construing that authority to permit continued detention until departure as a condition of voluntary departure); cf. 8 C.F.R. § 240.25(b) (expressly authorizing DHS to impose conditions necessary to ensure timely departure, including continued detention pending departure and removal under safeguards).

However, that is not Hassan's Petitioner's present posture. The voluntary departure period expired on July 3, 2025. No evidence shows it was extended. Once the voluntary departure period expired, as specified by the IJ's order, "the alternate order of removal [took] effect immediately." ECF No. 9-3 at 1. Thus, Petitioner became a post-removal-order detainee on July 3, 2025. From that point on, any continued detention was governed not by § 1229c(a), but by 8 U.S.C. § 1231 and the post-removal-order custody regulations. See 8 C.F.R. §§ 1240.26(b)(3), 241.4. The Court therefore analyzes Petitioner's present detention under § 1231(a)(6) and *Zadvydas*, not under the now-expired grant of voluntary departure.[2]

---

[2] Here again, the Court struggles to understand, and certainly to reconcile, the Government's argument with the correct legal framework. The Government's argument, encapsulated in its own brief, is that: "Petitioner is now a post-removal order detainee who is not subject to detention under 8 U.S.C. §1231." But Section 1231 plainly governs detention after a removal order becomes final, and ICE's post-order custody-review procedures likewise apply to detainees with final removal orders. See 8 U.S.C. § 1231(a); 8 C.F.R. § 241.4.

Thus, to describe Petitioner as a "post-removal order detainee" while disclaiming § 1231 is imprecise or simply incorrect. And it is unsupported by any cited or discovered authority.

The Court has nevertheless considered whether the former voluntary-departure condition somehow supplies an independent basis for Hassan's detention. It does not. The Government cites, and the Court has found, no support for that broader proposition either.

Respondents correctly observe that the Immigration Judge initially granted Petitioner pre-conclusion voluntary departure under safeguards. Voluntary departure is authorized by 8 U.S.C. § 1229c(a), not § 1229b. Under 8 C.F.R. § 1240.26(b)(1)(i), an IJ may grant such relief before the completion of removal proceedings when the noncitizen concedes removability, seeks no other relief, and waives appeal. *See also Garza-Moreno v. Gonzales*, 489 F.3d 239, 241–42 (5th Cir. 2007).

In some circumstances, an IJ may condition voluntary departure upon continued detention pending departure. *Matter of M-A-S-*, 24 I. & N. Dec. 762, 765–67 (B.I.A. 2009).

That authority, however, is necessarily limited by, among other things, its own stated terms. The IJ's stated departure date (absent extensions) has long passed, and Hassan remains detained with no departure, extension, or other intervening circumstance. Instead, ICE thereafter conducted 90-day and 180-day post-order custody reviews and continued Hassan's detention, purportedly under 8 C.F.R. § 241.4. Notably, those procedures expressly apply to persons detained under final orders of removal. See 8 C.F.R. §§ 241.4, 241.13; 8 U.S.C. § 1231(a). ICE's actions are consistent with detaining Hassan pursuant to a final order of removal.

Accordingly, whatever authority ICE had to detain Petitioner during the short voluntary-departure period "under safeguards" expired more than one year and three

months, or roughly 470 days, ago.[3] Petitioner's present detention is thus properly assessed under § 1231(a)(6) and the controlling standards of *Zadvydas.*

B. <u>Hassan's continued detention violates *Zadvydas.*</u>

After entry of a final removal order, the Government ordinarily has 90 days to effectuate removal. *See* 8 U.S.C. § 1231(a)(1)(A). Section 1231(a)(6), however, permits detention beyond 90 days for a period reasonably necessary to bring about a detainee's removal. *See Zadvydas*, 533 U.S. at 689, 701. Detention for up to six months is "presumptively reasonable." *Id.* at 701. Thereafter, if a detainee "provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future," the Government must respond with evidence sufficient to rebut that showing. *Id.*; *see also* 8 C.F.R. § 241.13.

The petitioner bears the initial burden of showing that there is no significant likelihood of removal in the reasonably foreseeable future. *See Andrade v. Gonzales*, 459 F.3d 538, 543 (5th Cir. 2006). Conclusory statements do not satisfy that burden. *See id.* at 543–44.

However, a petitioner is not required to "show the absence of any prospect of removal—no matter how unlikely or unforeseeable." *Zadvydas*, 533 U.S. at 702 (emphasis omitted). Rather, the petitioner must only establish good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future.

[3] Furthermore, the Government expressly acknowledges that the IJ's order "became administratively final" when both parties waived appeal, and characterizes Hassan as a "post-removal order detainee." Nevertheless, the Government maintains its conclusory position that the statute governing post-removal-order detention—and therefore, the Supreme Court's decision in *Zadvydas*—does not apply. ECF No. 9 at 2.

*Id.* at 701. Removal is not reasonably foreseeable merely because the Government continues removal efforts. *See id.* at 702; *Lambert v. Warden*, No. EP-26-CV-00427-DB, 2026 WL 926216, at *3 (W.D. Tex. Apr. 6, 2026); *see also Rodriguez Romero v. Ladwig*, 827 F. Supp. 3d 779, 807 (M.D. La. 2026) ("'[C]ontinued efforts' or good faith efforts are not enough; Zadvydas itself rejected this idea.").

Hassan has been subject to a final order of removal since July 3, 2025, when the "alternate" order of removal became effective instead of voluntary departure. Therefore, his detention has substantially exceeded the six-month presumptively reasonable period of *Zadvydas*. And as the period of post-removal-order detention grows, "what counts as the 'reasonably foreseeable future' conversely would have to shrink." *Zadvydas*, 533 U.S. at 701.

The Government's Declaration reflects only that ICE completed Hassan's removal packet in June 2025 and initially anticipated removing him on September 4, 2025. ECF No. 9-1 at 2. But that removal did not occur. Although Hassan's travel-document package was submitted for approval on January 26, 2026, the record contains no evidence that a travel document has been issued. In fact, on May 4, 2026, ERO was still seeking an update regarding its issuance. ECF No. 9-1 at 1-3.

This is not a case in which Hassan relies solely on the length of his detention or speculation that removal may prove difficult. The Government's own evidence reflects that a travel document had not been issued as of its last reported update. The record also contains no evidence that Pakistan—or any other country—is considering the travel-document request. On this record, Hassan has provided good

reason to believe that there is no significant likelihood of his removal in the reasonably foreseeable future.

The burden therefore shifts to the Government to rebut Hassan's showing with contrary evidence. *See Zadvydas*, 533 U.S. at 701. It has not done so.

Although the Government asserts that Hassan's departure is "forthcoming" (ECF No. 9 at 1), the record contains no evidence that Pakistan has issued a travel document, agreed to accept Hassan, or is considering the request. The declaration reflects only that, as of May 4, 2026, ERO was still seeking an update regarding the issuance of Hassan's travel document.

Thus, the record provides no basis to conclude that Hassan's removal is any more likely now than it was when the anticipated September 2025 removal did not occur, or when the voluntary departure order expired in July 2025. The Government's bare assertions that ICE is "working diligently to obtain travel documents, and that Hassan's removal is "forthcoming"—are wholly insufficient to carry its burden. Whatever latitude § 1231(a)(6) affords the Government for temporary, good-faith efforts to secure travel documents or arrange removal, it does not authorize indefinite civil detention based on the Government's intentions or the general possibility of removal. *See Zadvydas*, 533 U.S. at 689–701.

## III. Conclusion

Because Hassan has carried his initial burden to show that there is no significant likelihood of removal in the reasonably foreseeable future, and the Government has failed to rebut that showing,

IT IS RECOMMENDED that the Petition be GRANTED, and that Hassan be RELEASED within 7 days under appropriate conditions.

Under 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), a party may file written objections to this Report and Recommendation within 14 days of service, unless the Court grants an extension of time to file objections under Fed. R. Civ. P. 6(b). A party may also respond to another party's objections to this Report and Recommendation within 14 days of service of those objections, again unless the Court grants an extension of time to file a response to objections.

No other briefs may be filed without leave of court, which will only be granted for good cause. A party's failure to timely file written objections to this Report and Recommendation will bar a party from later challenging factual or legal conclusions adopted by the District Judge, except if the challenge asserts "plain error."

SIGNED on Friday, October 16, 2026.

JOSEPH H.L. PEREZ-MONTES
UNITED STATES MAGISTRATE JUDGE